# UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF ILLINOIS
### EASTERN DIVISION

JAMES FOSTER,          )

              Plaintiff,    )

      v.          )

AUDACY ILLINOIS, LLC, and AUDACY,  )
INC. D/B/A 670 THE SCORE,    )

         Defendants.  )

Civil Action No. 1:24-cv-11329

Hon. Jeffrey I. Cummings

## MEMORANDUM OF LAW IN SUPPORT OF DEFENDANTS'
## MOTION TO DISMISS THE COMPLAINT

Elizabeth A. McNamara (*pro hac vice*)
Abigail Everdell (*pro hac vice*)
DAVIS WRIGHT TREMAINE LLP
1251 Avenue of the Americas, 21st Floor
New York, New York 10020
lizmcnamara@dwt.com
abigaileverdell@dwt.com

Samantha Lachman (*pro hac vice*)
DAVIS WRIGHT TREMAINE LLP
350 South Grand Avenue, 27th Floor
Los Angeles, California 90071
Telephone: (213) 633-6800
samlachman@dwt.com

Douglas W. Bax
Jay Zenker
WILLIAMS, BAX & SALTZMAN, P.C.
221 N. LaSalle Street, Suite 3700
Chicago, Illinois 60601
bax@wbs-law.com
zenker@wbs-law.com

*Attorneys for Defendants Audacy Illinois, LIE and Audacy, Inc. d/b/a 670 The Score*

**TABLE OF CONTENTS**

Page

PRELIMINARY STATEMENT ...............................................................................................1

FACTUAL BACKGROUND ..................................................................................................2

    A.    The Parties .............................................................................................2

    B.    The Article .............................................................................................2

    C.    The Complaint ........................................................................................3

ARGUMENT ........................................................................................................................4

I.    PLAINTIFF'S DEFAMATION *PER SE* CLAIM FAILS .............................................5

    A.    Plaintiff Does Not Plead the Statements Are False ...............................6

    B.    Statements 1 and 2 Are Protected Opinion .........................................7

II.    PLAINTIFF'S FALSE LIGHT CLAIM FAILS .........................................................9

III.    PLAINTIFF FAILS TO PLEAD ACTUAL MALICE ...............................................12

    A.    Plaintiff is a Public Figure ....................................................................12

    B.    Plaintiff Has Not Pled a Plausible Theory of Actual Malice .................13

CONCLUSION ....................................................................................................................15

4887-3063-6029v.6 0097819-000012

# TABLE OF AUTHORITIES

**Page(s)**

**CASES**

*Anderson v. Liberty Lobby, Inc.*,
477 U.S. 242 (1986)........................................................................................................12

*Basarich v. Rodeghero*,
24 Ill. App. 3d 889 (1974) .............................................................................................13

*Bd. of Forensic Document Exam'rs., Inc. v. Am. Bar Ass'n*,
922 F.3d 827 (7th Cir. 2019) .......................................................................................5, 8

*Beaulieu v. Ashford Univ.*,
529 F. Supp. 3d 834 (N.D. Ill. 2021) .............................................................................7

*Bell Atl. Corp. v. Twombly*,
550 U.S. 544 (2007)....................................................................................4, 12, 13, 14

*Benton v. Little League Baseball, Inc.*,
2020 IL App (1st) 190549 (2020) ................................................................................11

*Biro v. Conde Nast*,
807 F.3d 541 (2d Cir. 2015)..........................................................................................15

*Black v. Wrigley*,
2017 WL 8186996 (N.D. Ill. Dec. 8, 2017) .................................................................5

*Brooks v. Ross*,
578 F.3d 574 (7th Cir. 2009) ........................................................................................13

*Brown v. Montgomery*,
2024 WL 1243669 (N.D. Ill. Mar. 22, 2024)............................................................8, 9

*Chapski v. Copley Press*,
92 Ill. 2d 344 (1982) .....................................................................................................10

*Counterman v. Colo.*,
600 U.S. 66 (2023)..........................................................................................................13

*Curtis Pub. Co. v. Butts*,
388 U.S. 130 (1967).......................................................................................................12

*Dorman v. Madison Cnty.*,
2022 WL 874733 (S.D. Ill. Mar. 24, 2022) ................................................................14

4887-3063-6029v.6 0097819-000012

*Evans v. Keystone Consol. Indus., Inc.*,
884 F. Supp. 1209 (C.D. Ill. 1995) .................................................................6

*Fairbanks v. Roller*,
314 F. Supp. 3d 85 (D.D.C. 2018) ................................................................5

*Falls v. Sporting News Pub. Co*,
714 F. Supp 843 (E.D. Mich. 1989) ..............................................................12

*Fox v. Crain Commc'ns., Inc.*,
2021 IL App (1st) 200153-U (Sept. 21, 2021) ................................................12

*Gertz v. Robert Welch, Inc.*,
680 F. 2d 527 (7th Cir. 1982) ....................................................................12

*Glob. Relief Found., Inc. v. New York Times Co.*,
390 F.3d 973 (7th Cir. 2004) .......................................................................6

*Grayson v. Curtis Pub. Co.*,
72 Wash. 2d 999 (1967) ............................................................................12

*Green v. Rogers*,
234 Ill. 2d 478 (2009) ............................................................................5, 11

*Hamilton v. City of Chicago*,
1996 WL 501612 (N.D. Ill. Sept. 3, 1996) ......................................................11

*Harte-Hanks Commc'ns. v. Connaughton*,
491 U.S. 666 (1989) ................................................................................14

*Imperial Apparel, Ltd. v. Cosmo's Designer Direct, Inc.*,
227 Ill. 2d 381 (2008) ...............................................................................6

*J.H. Desnick, M.D., Eye Servs. Ltd. v. Am. Broad. Cos.*,
233 F.3d 514 (7th Cir. 2000) ........................................................................6

*John E. Reid & Assocs., Inc. v. Netflix*, Inc.,
2020 WL 1330657 (N.D. Ill. Mar. 23, 2020) ...................................................10

*Kessler v. Zekman*,
250 Ill. App. 3d 172 (1993) .......................................................................14

*Kirchner v. Greene*,
294 Ill. App. 3d 672 (1998) .........................................................................9

*Knafel v. Chi. Sun-Times, Inc.*,
413 F.3d 637 (7th Cir. 2005) ......................................................................10

4887-3063-6029v.6 0097819-000012

*Kolegas v. Heftel Broad. Corp.*,
  154 Ill. 2d 1 (1992) ........................................................................................9

*Lee v. Radulovic*,
  1994 WL 384010 (N.D. Ill. July 20, 1994)........................................................14

*Lott v. Levitt*,
  556 F.3d 564 (7th Cir. 2009) ...............................................................5, 10

*Love v. Simmons*,
  2024 WL 809107 (N.D. Ill. Feb. 27, 2024) .....................................................10

*Madison v. Frazier*,
  539 F.3d 646 (7th Cir. 2008) ...............................................................10

*Masson v. New Yorker Magazine, Inc.*,
  501 U.S. 496 (1991)........................................................................12, 14, 15

*Michel v. NYP Holdings, Inc.*,
  816 F.3d 686 (11th Cir. 2016) ...............................................................5

*Milo Enters., Inc. v. Bird-X, Inc.*,
  2022 WL 874625 (N.D. Ill. Mar. 24, 2022)........................................................7

*Mogan v. Portfolio Media Inc.*,
  2024 WL 532229 (N.D. Ill. Feb. 9, 2024),
  *appeal filed*, No. 24-1331 (7th Cir. Mar. 4, 2024)................................................2

*Moore v. PETA*,
  402 Ill. App. 3d 62 (2010) ...............................................................11

*Muzikowski v. Paramount Pictures Corp.*,
  477 F.3d 899 (7th Cir. 2007) ...............................................................10

*N.Y. Times Co. v. Sullivan*,
  376 U.S. 254 (1964)........................................................................13

*Osundairo v. Geragos*,
  447 F. Supp. 3d 727 (N.D. Ill. 2020) .....................................................2

*Pippen v. NBCUniversal Media, LLC*,
  2012 WL 12903167 (N.D. Ill. 2012),
  *aff'd,* 734 F.3d 610 (7th Cir. 2013)........................................................12, 13, 14

*Pippen v. NBCUniversal Media, LLC*,
  734 F.3d 610 (7th Cir. 2013) ...............................................................12, 13

iv

*Raveling v. Harpercollins Publishers, Inc.*,
    2004 WL 422538 (N.D. Ill. Feb. 10, 2004) ...............................................11

*Ryan v. Fox Television Stations, Inc.*,
    979 N.E.2d 954 (2012)..............................................................................6

*Santiago v. Nw. Univ.*,
    No. 1:24-cv-02058 (N.D. Ill. filed Mar. 11, 2024) ..................................8

*Silk v. City of Chi.*,
    1996 WL 312074 (N.D. Ill. June 7, 1996) ...............................................14

*Skolnick v. Corr. Med. Servs., Inc.*,
    132 F. Supp. 2d 1116 (N.D. Ill. 2001) ...............................................8, 9

*Solaia Tech., LLC v. Specialty Pub. Co.*,
    221 Ill. 2d 558 (2006) .......................................................6, 8, 10

*Sunny Factory, LLC, v. Chen*,
    2022 WL 742429 (N.D. Ill. Mar. 11, 2022)............................................14

*Tavoulareas v. Piro*,
    817 F.2d 762 (D.C. Cir. 1987) ................................................................14

*Turner v. Wells*,
    879 F.3d 1254 (11th Cir. 2018) ..............................................................12

*Wang v. Bd. of Trs. of the Univ. of Ill.*,
    612 F. Supp. 3d 739 (N.D. Ill. 2020) ...................................................7, 9

**RULES**

Fed. R. Civ. P. 12(b)(6)...........................................................................1, 4

**CONSTITUTIONAL PROVISIONS**

United States Constitution, First Amendment ..............................................8

4887-3063-6029v.6 0097819-000012

Defendants Audacy Illinois, LLC and Audacy, Inc. (together, "Audacy") respectfully submit this memorandum of law in support of their motion to dismiss the Complaint (ECF No. 1-3), filed by Plaintiff James Foster ("Plaintiff") pursuant to Fed. R. Civ. P. 12(b)(6).

## PRELIMINARY STATEMENT

This case arises from Plaintiff's misguided attempt to blame thorough and responsible reporting on his conduct as head coach of the Northwestern University men's baseball team for the consequences of his own behavior—namely, his removal as head coach. Plaintiff's claims arise from a 670 The Score article (the "Article") reporting, based on accounts from nine coaches and students on the team (and Plaintiff's statements in response), that Plaintiff had created a toxic environment. The Article recounts how players were hiding their injuries from Plaintiff out of concern he would not take them seriously, had been subjected to racist comments, screaming, and unreasonable "punishment" workouts, and how Plaintiff had mistreated coaches and made a demeaning comment to a female staffer. Yet, Plaintiff does not actually challenge the Article's reporting. His Complaint does not mention, much less dispute, the Article's reporting about racist and sexist comments, screaming, or players hiding injuries, nor does it dispute that during his tenure as head coach of a different team, a player died following a workout. And while he purports to base a claim on specific reported instances of his treatment of players, he does not plead any facts to allege that, or how, this reporting is false.

Plaintiff's claims for defamation and false light fail because he has not pled their elements: ***First***, while he asserts that some of Audacy's reporting on the toxic environment he created is defamatory *per se*, he fails to allege the reporting is false, much less how it is false. ***Second***, Plaintiff bases a false light claim upon accurate reporting on an incident that occurred during his tenure as head coach at the University of Rhode Island, but cannot point to anything false in the statement, instead disputing an alleged implication that cannot reasonably be drawn from it. This is insufficient to plead falsity, particularly under Illinois' innocent construction rule. ***Finally***, as a long-time head coach of collegiate sports teams, Plaintiff is a public figure, and he has not pled Audacy acted with knowledge of falsity or serious doubts, *i.e.* with actual malice, as

1

he must to state his claims. For these reasons, Audacy respectfully requests that the Court dismiss the Complaint with prejudice.

## FACTUAL BACKGROUND[1]

### A.     The Parties

Plaintiff is the former head baseball coach at Northwestern. ECF No. 1-3 ¶ 2. He held that position from 2022 until he was relieved of his duties on July 13, 2023. *Id*. ¶¶ 8, 16. Plaintiff previously served as the head baseball coach at the University of Rhode Island, as an associate head coach at Boston College, and as the head baseball coach for the Military Academy at West Point. *Id*. ¶ 6.

Defendant Audacy Illinois, LLC operates the sports radio station 670 The Score, which serves the Chicago area. *Id*. ¶¶ 3-4. Defendant Audacy, Inc. is Audacy Illinois's ultimate parent company. *Id*. During the relevant time period, Danny Parkins was employed by Audacy Illinois, LLC as a radio host for 670 The Score. *Id*. ¶ 10.

### B.     The Article

On July 10, 2023, the Article titled "*Northwestern baseball head coach Jim Foster created toxic culture within program, sources allege*," authored by Parkins, was published on 670 The Score's website. *Id*. ¶ 11; Ex. A.[2] The Article was published soon after Northwestern's head football coach Pat Fitzgerald was suspended after an investigation revealed rampant hazing on the team. *Id*. at 2. Based on interviews with nine sources, who included "former coaches, current and former players and others close to the program," the Article reports on how Plaintiff had created a "toxic environment that has run off coaches, broken the spirit of his team, and led to a human resources investigation by the university regarding his alleged bullying and verbally

---

[1] Defendants assume the truth of the Complaint's allegations for the limited purpose of this motion to dismiss.

[2] The referenced exhibit refer to Exhibit A to the Declaration of Abigail B. Everdell, filed herewith. Because this action arises from the Article, the publication is incorporated by reference into the Complaint. *See, e.g., Mogan v. Portfolio Media Inc*., 2024 WL 532229, at *4 (N.D. Ill. Feb. 9, 2024) (in evaluating defamation claim on a motion to dismiss it was proper to review article "reference[d] . . . throughout [the] complaint" that "is central to [plaintiff's] claims"), *appeal filed*, No. 24-1331 (7th Cir. Mar. 4, 2024); *Osundairo v. Geragos*, 447 F. Supp. 3d 727, 738 (N.D. Ill. 2020)

abusive behavior." *Id*. at 1. It reports numerous specific incidents, including players "hid[ing] their injuries from Foster," *id*., a student athlete who "pushed too hard to return" after an elbow injury "because Foster wanted him back by a certain date" and ended up needing surgery, *id*., multiple instances of Plaintiff telling "upperclassmen that they should quit if they didn't return from injury sooner than expected," *id*., and an athlete who was subjected to a nearly 2.5-hour "punishment run." *Id*. The Article notes that "[t]his isn't the first time that Foster has found himself in a concerning situation regarding his players' physical well-being," and cites how, when Foster was head baseball coach at the University of Rhode Island, "a player on his team died following a strength and conditioning workout outdoors[,]" resulting in a wrongful death suit settled by the university "for $1.45 million." *Id*. The Article also reports how Plaintiff allegedly made racist and sexist comments, and "routinely scream[ed] at coaches and players in the dugout." *Id*. at 2. It reports that Northwestern conducted an internal investigation into Plaintiff's conduct and that an HR complaint had been filed against him. *Id*. at 1-2. That investigation corroborated that he told a female staff member that she could not be "on the field because he didn't want players 'staring at her ***' and that she should be in the press box taking notes." *Id*.

The Article also reports Plaintiff's response to the allegations, relayed in a phone interview with Parkins. As the Article reports, Plaintiff called it a "hit piece," and denied that he ever "dissuad[ed] players from seeing the trainers or getting medical help." *Id*. at 2. It also includes Plaintiff's explanation that he had come from West Point, "where you need to have the highest of standards to succeed[,]" his suggestion that the "coaches who detailed the toxic environment . . . wanted his job[,]" and his quote that "[m]aybe the players aren't good enough and are just making excuses or are disgruntled . . . Maybe it's how they're raised, could be any of that stuff." *Id*. Regarding the sexist comment, it included Plaintiff's explanation that women had to wear army uniforms at West Point, "but that they could wear tight pants at Northwestern." *Id*.

C.    **The Complaint**

Plaintiff filed the Complaint on July 9, 2024, in the Circuit Court of Cook County, ECF No. 7, ¶ 1, when Audacy was in the midst of bankruptcy proceedings. *Id*. After emerging from

bankruptcy, Audacy accepted service of the Complaint on October 15, 2024. *Id*. Audacy removed the case on November 1, 2024. ECF No. 1.

The Complaint does not deny that Northwestern conducted an internal investigation "regarding [Plaintiff's] alleged bullying and verbally abusive behavior" or that he was subject to an HR complaint, at which point "the university began monitoring him more closely." Ex. A at 1. It also does not deny that Plaintiff "routinely screamed at coaches and players in the dugout," or that "other coaches [ ] detailed the toxic environment." *Id*. at 1-2. The Complaint acknowledges that Northwestern "relieved [Plaintiff] of his duties as the head baseball coach" and that he "has been prohibited from using Northwestern University facilities to conduct baseball clinics and camps." ECF No. 1-3 ¶¶ 16-17.

The Complaint sets forth two causes of action, for defamation *per se*, ECF No. 1-3 ¶¶ 18-23, and false light. *Id*. ¶¶ 24-31. The defamation *per se* claim is based on four statements: "[1] that Foster created a toxic environment in the Northwestern University baseball program that has run off coaches and broken the spirit of the team, [2] that Foster discouraged players from seeking medical attention for their injuries, [3] that Foster told multiple upperclassmen that they should quit if they did not return from injury sooner than expected, and [4] that Foster subjected a player for a nearly two and one-half hour punishment run during practice." *Id*. ¶ 19. The Complaint does not, however, allege that any of these four statements are false, or how they are false.

The false light claim arises from a single statement: the Article's reporting on the Rhode Island incident, which allegedly "clearly impl[ies] that Foster was to some extent responsible or involved in the death of the Rhode Island player and that Foster was causing a similar potential fate for the Northwestern players." *Id*. ¶ 26. Plaintiff claims that he "was not involved in any way" in the workout preceding the player's death, and was not named in the lawsuit. *Id*. ¶¶ 12, 13.

## ARGUMENT

To survive a motion to dismiss under Rule 12(b)(6), a complaint must plead "enough facts to state a claim to relief that is plausible on its face," *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007), and plaintiffs must offer "more than labels and conclusions" to state a claim. *Id*.

4

at 555. Meritless libel claims are well-suited for early dismissal. *See, e.g., Fairbanks v. Roller*, 314 F. Supp. 3d 85, 89 (D.D.C. 2018) ("Early resolution of defamation cases . . . provides assurance to those exercising their First Amendment rights that doing so will not needlessly become prohibitively expensive.") (internal quotation omitted); *Michel v. NYP Holdings, Inc.*, 816 F.3d 686, 702 (11th Cir. 2016) ("[T]here is a powerful interest in ensuring that free speech is not unduly burdened by the necessity of defending against expensive yet groundless litigation.").

Plaintiff has not met baseline pleading requirements for his claims, nor can he hope to. His defamation *per se* claim fails to allege any facts in support of a theory of falsity, his false light claim fails to plead falsity because he does not challenge the truth of the statement itself, but only an unreasonable, overstrained reading of it, and both claims fail because he is a public figure who must plausibly plead that the statements were published with actual malice, and he has failed to do so. The Complaint should be dismissed with prejudice.

## I.     PLAINTIFF'S DEFAMATION *PER SE* CLAIM FAILS

To state a defamation claim, Plaintiff must plausibly allege that Defendants "made a false statement about [him], that [they] made an unprivileged publication of that statement to a third party, and that [the] publication caused damages." *Bd. of Forensic Document Exam'rs., Inc. v. Am. Bar Ass'n*, 922 F.3d 827, 831-32 (7th Cir. 2019) (citation omitted). While a statement of fact may be actionable as defamation, "opinions that do not misstate facts" are not actionable as a matter of law. *Id.* at 832. "[I]llinois courts have emphasized that the meaning of a statement is not a fact for the jury to find, but a 'question of law to be resolved by the court.'" *Lott v. Levitt*, 556 F.3d 564, 568 (7th Cir. 2009) (citation omitted).

Because it "relieves the plaintiff of proving actual damages," a "defamation *per se* claim must be pled with a heightened level of precision and particularity." *Green v. Rogers*, 234 Ill. 2d 478, 495 (2009) (citation omitted). *See also Black v. Wrigley*, 2017 WL 8186996, at *94 (N.D. Ill. Dec. 8, 2017) ("[a]lthough federal pleading standards apply in diversity cases. . ., a federal court's 'reliance on federal procedural rules does not allow [it] to ignore Illinois substantive law,' which puts a 'thumb on the scale for defendants in defamation per se actions, where

damages are presumed.") (citation omitted). Plaintiff must also plead that the Article was published with the requisite degree of fault. *J.H. Desnick, M.D., Eye Servs. Ltd. v. Am. Broad. Cos.*, 233 F.3d 514, 517-18 (7th Cir. 2000). *See* Section III, *infra*.

### A.    Plaintiff Does Not Plead the Statements Are False

"Falsity is an essential element in a defamation claim," and Plaintiff bears the burden of pleading falsity. *Ryan v. Fox Television Stations, Inc.*, 979 N.E.2d 954, 965 (2012) (citation omitted). *See also Glob. Relief Found., Inc. v. New York Times Co.*, 390 F.3d 973, 982 (7th Cir. 2004) (when a "plaintiff seeks damages against a media defendant for speech on matters of public concern, the plaintiff must bear the burden of showing that the speech at issue is false"); *Imperial Apparel, Ltd. v. Cosmo's Designer Direct, Inc.*, 227 Ill. 2d 381, 396 (2008) ("There can be no presumption that the defamatory statement is false.") (citation omitted). A conclusory pleading of falsity is insufficient. Instead, "[t]o state a defamation claim, a plaintiff must *present facts* showing that the defendant made a false statement about the plaintiff[.] . . ." *Solaia Tech., LLC v. Specialty Pub. Co.*, 221 Ill. 2d 558, 579 (2006) (emphasis added) (citation omitted). *See also Evans v. Keystone Consol. Indus., Inc.*, 884 F. Supp. 1209, 1216 (C.D. Ill. 1995) ("[t]o state a claim for defamation under Illinois state law, a plaintiff must present facts sufficient to show that the defendants made a false statement concerning him[] . . .") (citation omitted).

Plaintiff's defamation *per se* claim arises from the following statements in the Article:

1. "In his first season leading the Northwestern baseball program, Coach Foster created a toxic environment that has run off coaches, [and] broken the spirit of his team . . ." Ex. A at 1 (Statement 1).

2. "As part of the toxic culture, Foster discouraged players from seeking medical attention for their injuries . . ." Ex. A at 1 (Statement 2).

3. "Foster also told multiple upperclassmen that they should quit if they didn't return from injury sooner than expected, sources said." Ex. A at 1 (Statement 3).

4. "One player detailed to 670 The Score how he was the subject of a punishment run for nearly the entirety of a 2 1/2-hour practice last fall." Ex. A at 1 (Statement 4).

ECF No. 1-3 ¶ 19. Nowhere in the Complaint, however, does Plaintiff allege that these

6

statements are false. Instead, the Complaint simply repeats Statements 1-4 under a conclusory count of defamation *per se*. At most, Plaintiff alleges that "Danny Parkins knew that the statements were false or lacked reasonable grounds to believe that the statements were true[,]" ECF No. 1-3 ¶ 22. But this conclusory allegation goes to Audacy's alleged fault and does not affirmatively allege falsity or *how* Statements 1-4 are false. Plaintiff thus fails to allege that these statements were false with the plausibility required under the Federal Rules or the particularity required for defamation *per se*. Plaintiff clearly understands this critical distinction. In the context of his false light cause of action, Plaintiff affirmatively alleges that Audacy created a "false implication" and attempts to explain why: "there is no evidence at all indicating that [he] had anything to do with the workout that preceded Joseph Ciancola's death." *Id*. ¶¶ 25, 30. Though this also fails to plead falsity for the reasons explained *infra*, it at least explains the basis for the allegation. The Complaint includes no such denial for Statements 1-4, however, indicating that Plaintiff lacks the grounds to allege the statements are false.

In short, Plaintiff fails to allege falsity as to Statements 1-4 and most certainly fails to do so with the particularity required. Courts regularly dismiss defamation claims in circumstances like this. *See, e.g.*, *Wang v. Bd. of Trs. of the Univ. of Ill.*, 612 F. Supp. 3d 739, 753 (N.D. Ill. 2020) (dismissing defamation and false light claims for "fail[ure] to plead a false statement, where the plaintiff "does not claim that he did not make any of those statements. Instead, he simply disagrees with the [defendant's] characterization of his actions as research misconduct."); *Beaulieu v. Ashford Univ.*, 529 F. Supp. 3d 834, 852 (N.D. Ill. 2021) (dismissing defamation claim that failed to include an "explanation of … falsity"). *See also Milo Enters., Inc. v. Bird-X, Inc.*, 2022 WL 874625, at *10 n.12 (N.D. Ill. Mar. 24, 2022) (noting defamation claim was deficient where plaintiff "has not, in any of its pleadings or responses, explicitly pointed to evidence showing that this allegation is false."). Plaintiff's defamation *per se* claim should likewise be dismissed.

### B.    Statements 1 and 2 Are Protected Opinion

Because the Complaint does not include allegations disputing the facts underpinning

them, the Article's reporting that he created "a toxic environment that has run off coaches, [and] broken the spirit of his team" (Statement 1) and its reference to the "toxic culture" of the team (Statement 2) are expressions of opinion which are not actionable as defamation.

Statements of opinion are not actionable. *Solaia Tech., LLC*, 221 Ill.2d at 581 ("if a statement is defamatory *per se*, . . . it still may enjoy constitutional protection as an expression of opinion."). To determine whether a statement is a fact or an opinion, courts consider "whether the statement has a precise and readily understood meaning; whether the statement is verifiable; and whether the statement's literary or social context signals that it has factual content." *Id.* (citation omitted). "Not all statements that doubt or impugn an individual's professional abilities are actionable. To the contrary, opinions that do not misstate facts are protected not only by Illinois law but also by the First Amendment." *Bd. of Forensic Document Exam'rs.*, 922 F.3d at 32. Critically, "when there is no dispute as to the veracity of the factual statements, any accompanying expressions of opinion are non-actionable." *Brown v. Montgomery*, 2024 WL 1243669, at *10 (N.D. Ill. Mar. 22, 2024) (citation omitted). *See also Skolnick v. Corr. Med. Servs., Inc.*, 132 F. Supp. 2d 1116, 1125–26 (N.D. Ill. 2001) ("To the extent a statement consists of both verifiable facts and expressions of opinion, the defamation claim fails if the facts are true") (citation omitted).

Here, Plaintiff's claim about Statements 1 and 2 arise from subjective opinions based on undisputed reporting that he had made racist and sexist comments, his players felt pressured to hide injuries and return too quickly from recovery, were subjected to yelling and a punishment run, and that assistant coaches had been run off the team.[3] Plaintiff admitted that he imposed "high[er][] standards" because of his West Point background and had asked a female staffer to leave the field because of her "tight pants," and suggested players who complained were not "good enough and are just making excuses." Ex. A at 1-2. These admissions are sufficient to

---

[3] Notably, a former baseball coach sued Northwestern, as well as Plaintiff individually, alleging that he was retaliated against for raising concerns about the "abusive, toxic, and dangerous environment" Foster presided over. *See Santiago v. Nw. Univ.*, No. 1:24-cv-02058, Comp. ECF No. 1-1 ¶ 2 (N.D. Ill. filed Mar. 11, 2024).

support a subjective belief that Plaintiff has fostered a "toxic culture" and a "toxic environment that has run off coaches, [and] broken the spirit of his team." Accordingly, since Plaintiff does not "deny the truth of the factual bases for Defendants' accusations," *Brown*, 2024 WL 1243669, at *10, there can be no liability. *See also Skolnick*, 132 F. Supp. 2d at 1127 (a defendant "is entitled to form an opinion about [an unchallenged reported] fact without incurring liability") (citation omitted). Plaintiff's defamation claim based on these statements should be dismissed.

## II.     PLAINTIFF'S FALSE LIGHT CLAIM FAILS

Plaintiff's false light claim similarly fails to allege a false statement. The claim arises from the Article's reporting that, "This isn't the first time that Foster found himself in a concerning situation regarding his players' physical wellbeing. Foster was the head coach of the Rhode Island program from 2006-'14. In October 2011, a player on his team died following a strength and conditioning workout outdoors. The family filed a wrongful death lawsuit against the University, and it was settled for $1.45 million." ECF No. 1-3 ¶ 25; Ex. A at 1 (the "Rhode Island Statement"). Plaintiff alleges that this statement, juxtaposed with the Article's other reporting, implies that he "was responsible or involved in the death of a student," ECF No. 1-3 ¶ 28, and that he "was trying to run a Northwestern player to death or injury." *Id.* ¶ 29. But Plaintiff has not pled that the statement at issue is false. Instead, he imposes unreasonable implications upon the statement and disputes those implications. This straw man approach is foreclosed by Illinois' innocent construction rule. Because there is an obvious non-defamatory construction of the Rhode Island Statement, it is not actionable.

To state a claim for false light, Plaintiff must allege that (1) he was "placed in a false light before the public as a result of the [D]efendants' actions," (2) that false light "would be highly offensive to a reasonable person," and (3) the Defendants "acted with actual malice." *Kolegas v. Heftel Broad. Corp.*, 154 Ill. 2d 1, 17 (1992) (citation omitted). Essential to this claim is an allegation that the defendant made a false statement about the plaintiff. *Wang*, 612 F. Supp. 3d at 753 (N.D. Ill. 2020); *Kirchner v. Greene*, 294 Ill. App. 3d 672, 683 (1998) ("Absent some allegation as to what specific statement was false, a claim based on *false* light simply fails to

satisfy the most basic element of the cause of action."); *Love v. Simmons*, 2024 WL 809107, at *7 (N.D. Ill. Feb. 27, 2024) ("Without falsity, it's light's out for the false light claim.").

False light claims are also subject to Illinois' "innocent construction rule." *See John E. Reid & Assocs., Inc. v. Netflix*, Inc., 2020 WL 1330657, at *11 (N.D. Ill. Mar. 23, 2020); *Muzikowski v. Paramount Pictures Corp.*, 477 F.3d 899, 903–05 (7th Cir. 2007). This rule "requires a court to consider the statement in context and give the words of the statement, and any implications arising from them, their natural and obvious meaning." *Madison v. Frazier*, 539 F.3d 646, 653-54 (7th Cir. 2008) (quoting *Solaia*, 221 Ill. 2d at 580). "[I]f, as so construed, the statement may reasonably be innocently interpreted . . . it cannot be actionable *per se*." *Chapski v. Copley Press*, 92 Ill. 2d 344, 352 (1982). "[W]hether a statement is reasonably capable of an innocent construction is a question of law for the court to decide." *Knafel v. Chi. Sun-Times, Inc.*, 413 F.3d 637, 640 (7th Cir. 2005) (affirming dismissal of defamation claim) (citation omitted). *Lott v. Levitt*, 556 F.3d 564, 569 (7th Cir. 2009) ("[Although] [c]ourts, when reviewing a motion to dismiss, are [] required to accept as true the facts alleged in the complaint, . . . . [t]hat does not mean that the court must take the plaintiff's *interpretation* of the allegedly defamatory words at face value.").

Plaintiff does not dispute that the Rhode Island incident occurred, that he was head baseball coach at the time,[4] or that a wrongful death suit was filed and resulted in a seven-figure settlement. Instead, he takes issue with the Article's "juxtaposition" of its reporting about treatment of Northwestern baseball players with its description of the Rhode Island incident, alleging this "clearly impl[ies] that Foster was to some extent responsible or involved in the death of the Rhode Island player and that Foster was causing a similar potential fate for the Northwestern players." ECF No. 1-3 ¶¶ 25, 26. Because "there is no evidence at all indicating that Foster had anything to do with the workout that preceded Joseph Ciancola's death[,]" Plaintiff contends, the Article's reporting on Ciancola's death is false. Yet, the Article does not state or imply that

---

[4] In fact, Plaintiff affirmatively admits that he was, alleging he was "head baseball coach at the University of Rhode Island for eight (8) years" prior to 2015—namely, the period during which the incident occurred. ECF No. 1-3 ¶ 6.

Plaintiff was personally involved in the workout preceding the death. *Id*. ¶ 30. Instead, it reports, undisputedly, that a "concerning situation" involving a player's "physical well-being" at Rhode Island University—namely, a student dying after a baseball team workout—happened when Plaintiff was head coach. Ex. A at 1. The only reasonable construction of this reporting is the innocent one: Plaintiff was the head coach when the incident occurred. Plaintiff does not dispute this, nor could he, and thus cannot premise a false light claim upon the Rhode Island Statement. *See Benton v. Little League Baseball, Inc.*, 2020 IL App (1st) 190549 ¶ 88 (2020) (affirming dismissal of false light claim where allegedly false statements as innocently construed were not about plaintiffs); *Green v. Rogers*, 234 Ill. 2d 478, 499–500 (2009) (allegation that plaintiff "abused players, coaches, and umpires" subject to reasonable construction where "abuse" could mean "coarsely reproaching" or "mismanagement," and "[b]ehavior of this nature is neither unusual nor unexpected from parents and coaches in amateur athletics[.]"). *Id*. at 502.

By contrast, the construction Plaintiff proposes is entirely *un*reasonable. Nowhere does the Article report, or even insinuate, that Plaintiff was personally responsible for Ciancola's death or that he "was trying to run a Northwestern player to death or injury," as he alleges. ECF No. 1-3 ¶¶ 29, 26. Illinois courts have repeatedly rejected attempts like Plaintiff's to characterize statements as accusatory when they cannot reasonably be read that way. *See, e.g. Moore v. PETA*, 402 Ill. App. 3d 62, 72 (2010) (statement posted on Internet that neighbors of plaintiff's dog training facility were "frustrated by the continued acts of cruelty they had to witness" was not actionable since defendant "did not himself state that [plaintiff] was being cruel to animals or that he witnessed her being cruel to animals"); *Raveling v. Harpercollins Publishers, Inc.*, 2004 WL 422538, at *2 (N.D. Ill. Feb. 10, 2004) (dismissing false light claim arising from plaintiff's photograph being included in a book on organized crime, where plaintiff did not dispute any statements about her included in the book); *Hamilton v. City of Chicago*, 1996 WL 501612, at *7–8 (N.D. Ill. Sept. 3, 1996). In short, Illinois law prohibits adopting Plaintiff's strained and unreasonable interpretation over the obvious, innocent, and factually undisputed construction of the Rhode Island Statement. Plaintiff's claim for false light should be dismissed.

11

### III.     PLAINTIFF FAILS TO PLEAD ACTUAL MALICE

For a public figure defamation plaintiff to survive a motion to dismiss, he must set out sufficient facts to make a claim of actual malice "plausible on its face." *Twombly*, 550 U.S. at 570. *See also Pippen v. NBCUniversal Media, LLC*, 734 F.3d 610, 614 (7th Cir. 2013); *Fox v. Crain Commc'ns, Inc*., 2021 IL App (1st) 200153-U ¶ 73 (Sept. 21, 2021) ("Where no evidence of actual malice exists, there is no cause of action for false light . . ."). "Actual malice" is "a term that looks as if it might mean 'ill will' but in fact means knowledge the statement is false or reckless disregard of whether it is false." *Pippin*, 734 F.3d at 612 (citing *Masson v. New Yorker Magazine, Inc*., 501 U.S. 496, 510 (1991)). Actual malice is also required to recover punitive damages, which Plaintiff seeks in this case. *See Gertz v. Robert Welch, Inc*., 680 F. 2d 527, 540 (7th Cir. 1982). It must ultimately be proven by "clear and convincing" evidence. *Anderson v. Liberty Lobby, Inc*., 477 U.S. 242, 255-57 (1986). Here, Plaintiff is a public figure at minimum for purposes of this dispute, and has not pled facts in support of a plausible theory of actual malice. Both his claims should be dismissed on this basis.

### A.     Plaintiff is a Public Figure

As a former head coach of a collegiate sports team, Plaintiff is a public figure. "Whether the plaintiff is a public figure is an issue to be decided by the court." *Pippen v. NBCUniversal Media, LLC*, 2012 WL 12903167, at *2 (N.D. Ill. 2012) (holding plaintiff's own allegations established he was a public figure), *aff'd,* 734 F.3d 610, 614 (7th Cir. 2013). Courts have consistently held that professional and collegiate athletic coaches are public figures because "the public has a justified and important interest" in their conduct in these roles. *Grayson v. Curtis Pub. Co.*, 72 Wash. 2d 999, 1007 (1967) (head basketball coach at the University of Washington was a public figure). *See also, e.g.*, *Curtis Pub. Co. v. Butts*, 388 U.S. 130, 154-55 (1967) (athletic director at the University of Georgia was a public figure "by position alone"); *Turner v. Wells*, 879 F.3d 1254, 1272 (11th Cir. 2018) ("the precedent of other jurisdictions, [] generally consider coaches of professional and collegiate sports teams to be public figures.") (citation omitted); *Falls v. Sporting News Pub. Co*, 714 F. Supp 843, 846-47 (E.D. Mich. 1989) ("[s]ports

figures are generally considered public figures because of their position as athletes or coaches.") (citation omitted); *Basarich v. Rodeghero*, 24 Ill. App. 3d 889, 894 (1974) (actual malice standard applied to high school athletic coach).

Here, by his own description, Plaintiff has been the head baseball coach at several prominent universities and previously ran summer baseball camps and clinics at Northwestern. ECF No. 1-3 ¶¶ 6, 9. He also lauds his own "success[]" as a head coach, including how he led his teams to "two Atlantic 10 Conference championships" and "three Patriot League championships." *Id*. ¶ 7. Plaintiff's prominent coaching position at household-name universities is sufficient to find he is a public figure. Indeed, his listing of his accomplishments makes such a finding inevitable. *See Pippen*, 2012 WL 12903167, at *2 ("the allegations of plaintiff's complaint detail his numerous achievements as a professional basketball player," and thus "concedes beyond dispute that" he is a public figure) (citation omitted).

**B.      Plaintiff Has Not Pled a Plausible Theory of Actual Malice**

Because Plaintiff is a public figure, he must plead that Defendants acted with actual malice. *See N.Y. Times Co. v. Sullivan*, 376 U.S. 254, 282-83 (1964); *Counterman v. Colo.*, 600 U.S. 66, 76 (2023) (reaffirming the *Sullivan* standard). He has not done so. Particularly since the Supreme Court's decision in *Twombly*, 550 U.S. at 556, pleading actual malice requires more than a conclusory claim that statements were published with knowledge of falsity. Instead, "[a] plaintiff [] must point to details sufficient to render a claim [of actual malice] plausible." *Pippen*, 734 F.3d at 614 (citation omitted). *See also Brooks v. Ross*, 578 F.3d 574, 581 (7th Cir. 2009) ("courts should not accept as adequate abstract recitations of the elements of a cause of action or conclusory legal statements."). In *Pippen*, the Seventh Circuit affirmed dismissal of defamation and false light claims where the defendant falsely reported that the plaintiff had filed for bankruptcy. The court held that allegations the defendant had failed to investigate court dockets and had failed to retract after being alerted to the error were insufficient to plead that it knew the reporting was false or had serious doubts at the time of publication. *Id*. at 614. District courts likewise do not hesitate to dismiss defamation and false light claims based on thinly pled

13

allegations of actual malice. *See, e.g.*, *Dorman v. Madison Cnty.*, 2022 WL 874733, at *4 (S.D. Ill. Mar. 24, 2022) ("the bare conclusory claim of malice, unaccompanied by allegations from which the required subjective element of malice might be inferred, is insufficient to survive a motion to dismiss.") (quoting *Pippen*, 2012 WL 12903167, at *2); *Sunny Factory, LLC, v. Chen*, 2022 WL 742429, at *4 (N.D. Ill. Mar. 11, 2022) (allegations of actual malice inadequate, because "[m]aking broad assertions that mimic the elements of the claim is not sufficient to meet the requirements for a well-pleaded complaint.") (citation omitted). Indeed, even before *Twombly*, district courts rejected "bald or bare allegations of [actual] malice." *Silk v. City of Chi.*, 1996 WL 312074, at *31 (N.D. Ill. June 7, 1996) (complaint must contain "some factual allegations from which malice can be inferred") (citation omitted). *See also Lee v. Radulovic*, 1994 WL 384010, at *7 (N.D. Ill. July 20, 1994) ("the complainant must plead specific facts from which the inference of actual malice can be drawn.") (citation omitted).

Here, bald allegations of actual malice are all the Complaint offers. First, Plaintiff alleges that Parkins "knew that the statements were false or lacked reasonable grounds to believe that the statements were true." ECF No. 1-3 ¶ 22. This conclusory recitation is patently insufficient. He next accuses Parkins of "set[ting] out on a campaign to get Foster fired[,]" *id*. ¶ 14, but this says nothing about Parkins' knowledge of falsity. As the Supreme Court has made clear, actual malice is not demonstrated by spite or ill-will. *Masson v. New Yorker Mag., Inc.*, 501 U.S. 496, 510 (1991) ("Actual malice . . . should not be confused with the concept of malice as an evil intent or a motive arising from spite or ill will.") (citation omitted); *Harte-Hanks Commc'ns. v. Connaughton*, 491 U.S. 666 n.7, 667 (1989) ("The phrase 'actual malice' is unfortunately confusing in that it has nothing to do with bad motive or ill will."). *See also Kessler v. Zekman*, 250 Ill. App. 3d 172, 190 (1993) ("proof of personal animosity alone is insufficient to meet the high burden imposed by the *New York Times* standard.") (citation omitted). And in any event, a supposed desire to see Plaintiff removed from his role—particularly after hearing about even just those portions of the Article Plaintiff does not dispute—does not equate to a motivation to lie. *See Tavoulareas v. Piro*, 817 F.2d 762, 796 (D.C. Cir. 1987) (a motivation to publish sensational

or negative stories was insufficient to show actual malice, where there was no evidence of a specific motivation to lie or disregard the truth).

Finally, regarding the Rhode Island Statement, Plaintiff alleges that Defendants "acted with malice in that Defendants knew that the implication that Foster was responsible for or involved in the death of Joseph Ciancola was false . . . in that there is no evidence at all indicating that Foster had anything to do with the workout that preceded Joseph Ciancola's death." *Id*. ¶ 30. This allegation is belied by Plaintiff's admission that he was head coach of the Rhode Island team at the time of Ciancola's death, meaning the incident happened under his leadership and thus had something "to do with" him. *Id*. Audacy's knowledge of whether or not Plaintiff was personally involved in the workout is irrelevant, since the Article does not report he was. *See Masson*, 501 U.S. at 516 (no actual malice where publication was substantially true).

Nor is there any other reason to conclude, or even suspect, that the Article was published with knowledge of falsity or serious doubts. To the contrary, the Article bears every indicia that it was reported thoroughly and in good faith. It cites accounts from "nine sources," "comprised of former coaches, current and former players and others close to the program." Ex. A at 1-2. The Article also indicates that Foster's conduct led to an HR complaint and investigation. *Id*. Additionally, Parkins interviewed Plaintiff, gave him the opportunity to "address[] the allegations against him," and included his explanations and denials. *Id*. at 2. These clear indicia of thorough reporting make any inference of actual malice impossible. *Biro v. Conde Nast*, 807 F.3d 541, 546 (2d Cir. 2015) (affirming dismissal for failure to plead actual malice where plaintiff's complaint did not "allege facts that would have prompted the [ ] defendants to question the reliability of any of the named or unnamed sources at the time the Article was published."). In short, the Complaint fails to allege facts in support of a plausible theory of actual malice, and may be dismissed on this basis.

## CONCLUSION

For the foregoing reasons, Defendants respectfully request that this Court dismiss Plaintiff's Complaint with prejudice and award such other relief the Court deems just and proper.

4887-3063-6029v.6 0097819-000012

Dated: December 13, 2024        Respectfully submitted,

/s/ *Abigail Everdell*
Elizabeth A. McNamara (*pro hac vice*)
Abigail Everdell (*pro hac vice*)
DAVIS WRIGHT TREMAINE LLP
1251 Avenue of the Americas, 21st Floor
New York, New York 10020
lizmcnamara@dwt.com
abigaileverdell@dwt.com

Samantha Lachman (*pro hac vice*)
DAVIS WRIGHT TREMAINE LLP
350 South Grand Avenue, 27th Floor
Los Angeles, California 90071
Telephone: (213) 633-6800
samlachman@dwt.com

Douglas W. Bax
Jay Zenker
WILLIAMS, BAX & SALTZMAN, P.C.
221 N. LaSalle Street, Suite 3700
Chicago, Illinois 60601
bax@wbs-law.com
zenker@wbs-law.com

*Attorneys for Defendants Audacy Illinois, LIE and Audacy, Inc. d/b/a 670 The Score*

4887-3063-6029v.6 0097819-000012

**Certificate of Service**

I, Abigail Everdell, an attorney, hereby certify that I caused a copy of the foregoing

**Defendants' Motion to Dismiss** to be electronically filed with the Clerk of the Court pursuant to

Electronic Filing Procedures and using the CM/ECF system.


*/s/ Abigail Everdell*         

4887-3063-6029v.6 0097819-000012